# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALBERT BREMPONG, A 41 586 151, | : | |
|     Petitioner, | : | |
| | : | |
| vs. | : | Civil No: 3:05cv733(PCD) |
| | : | |
| MICHAEL CHERTOFF, SECRETARY OF | : | |
| HOMELAND SECURITY, ALBERTO | : | |
| GONZALES, ATTORNEY GENERAL OF THE | : | |
| UNITED STATES, MICHAEL GARCIA, ICE | : | |
| ASSISTANT SECRETARY, STEVEN J. | : | |
| FARQUHARSON, DISTRICT DIRECTOR | : | |
| BUREAU OF IMMIGRATION AND | : | |
| CUSTOMS ENFORCEMENT and GEORGE | : | |
| SULLIVAN, INTERIM OFFICER IN CHARGE, | : | |
| DETENTION AND REMOVAL OPERATIONS, | : | |
|     Respondents. | : | |

## RULING ON RESPONDENT'S MOTION TO TRANSFER

Petitioner, Albert Brempong, has filed with this Court a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  He seeks an injunction enjoining Respondents from deporting him to his native Ghana, pursuant to his deportation order.  Respondents have filed a Motion to Transfer the petition to the Second Circuit Court of Appeals pursuant to § 106(c) of the REAL ID Act of 2005 [Doc. No. 9].

## I.  BACKGROUND[1]

Petitioner, Albert Brempong, a native and citizen of Ghana, was admitted to the United States as a permanent resident in 1988 based upon a petition filed by his father, who is a United States citizen.  Pet. ¶ 8.  In 1991, Petitioner was arrested for and convicted of attempting to

---

[1]    The facts described herein are based upon the undisputed facts presented in Petitioner's Petition for Writ of Habeas Corpus and the parties' subsequent briefs.

import illegal narcotics into the Unites States.  Id. at ¶ 9.  Thereafter, the INS instituted removal

proceedings of Petitioner on the basis of his drug convictions.  Id. at ¶ 10.  The INS sought to

deport Petitioner under former INA § 241(a)(2)(A)(iii), as one having been convicted of an

aggravated felony, and former INA § 2441(a)(2)(B)(i), as one having been convicted of a

controlled substance offense.  Id.  Petitioner applied for relief from deportation under former INA

§ 212(c).

On June 30, 1994 the Immigration Judge ("IJ") held that Petitioner was ineligible for

relief under § 212(c) because he did not have seven years of lawful residence as required by the

statute.  Id. at ¶ 11.  The IJ held Petitioner deportable on the basis of his aggravated felony and

controlled substance violation and ordered his removal to Ghana.  Id.  Petitioner appealed to the

Board of Immigration Appeals ("BIA"), which affirmed the IJ's deportation order.  Id.

After Petitioner's 1991 arrest, he assisted the Department of Justice in its investigation of

the major Ghanian drug ring with which Petitioner had been involved.  Id. at ¶ 13.  After the IJ

and BIA ordered Petitioner's removal, the Department of Justice obtained an S-visa for Petitioner

for providing information "that contributed to the successful prosecution of seven members of a

major Ghanian drug ring which imported heroin into the United States from Korea, Thailand, and

Ghana for distribution in New York, New Jersey, and elsewhere in the United States."  Id. at ¶

14-15.  The S-visa was obtained on September 30, 1996 and was valid for three years.  Id. at ¶

15.  The Department of Justice also began processing Petitioner's application for lawful

permanent residence based on the S-visa, but the processing was never completed.  Id.

In December of 2004, Petitioner was summoned to appear in a Connecticut court on

breach of peace charges.  Id. at ¶ 16.  Petitioner missed one of the hearings in the case and was

subsequently charged with failure to appear.  Id.  Petitioner turned himself in and was arrested on

both the breach of peace and failure to appear charges.  Id.  While in state custody, the

Department of Homeland Security ("DHS"), formerly the Immigration and Naturalization

Service, learned of Petitioner's custody status and placed an immigration detainer on him.  Id.

Petitioner was subsequently convicted and sentenced to sixty days imprisonment.  Id.  He

completed his sentence in January of 2005 and was thereafter transferred to DHS custody

pursuant to the detainer.  Petitioner has remained in DHS custody since that time.  Id. at ¶ 17.

Petitioner filed a petition for a Writ of Habeas Corpus [Doc. No. 1] pursuant to 28 U.S.C.

§ 2241 with this Court on May 6, 2005, arguing that if he is removed to Ghana he will be

tortured or killed for his cooperation with the Department of Justice.  Pet. at 1.  Petitioner claims

that the government, pursuant to the Fifth Amendment, has an affirmative duty to protect him

because the government assisted in creating the danger he will face if removed to Ghana.  Id. at ¶

20.  Accordingly, he seeks to enjoin Respondents from removing him to his native Ghana.

On May 24, 2005, Respondents filed a Notice of Applicability of Public Law 109-13

("The REAL ID Act of 2005") and Motion to Transfer, seeking to transfer Petitioner's habeas

petition to the Court of Appeals for the Second Circuit.  Respondents claim, pursuant to § 106(c)

of the REAL ID Act of 2005, that this Court must transfer Petitioner's habeas petition to the

Court of Appeals as it is a challenge to a final administrative order of removal.  See Resp'ts'

Mot. Transfer at 2.

## II.  DISCUSSION

### A.  Jurisdiction and Transfer under the REAL ID Act of 2005

The REAL ID Act was enacted on May 11, 2005 as part of the "Emergency Supplemental

Appropriation Act for Defense, the Global War on Terror, and Tsunami Relief, 2005."  Pub. L.

No. 109-13, 119 Stat. 231 (2005).  Section 106 of the Act amends § 242 of the Immigration and

Nationality Act ("INA") of 1952, 8 U.S.C. § 1252, by changing the procedures for judicial

review of administrative final orders of removal.  The Act specifically strips the district courts of

their habeas corpus jurisdiction over orders of removal.  Section 106(a)(1) of the Act mandates

that the courts of appeals shall be the sole and exclusive means for judicial review of an order of

removal.[2]  Section 106 took effect on May 11, 2005, the date of the enactment of the REAL ID

Act, and applies to all cases in which a final administrative order of removal, deportation, or

exclusion was issued before, on, or after the date of enactment.  Id. at § 106(b).  In addition to

requiring petitions filed after May 11, 2005 to be filed in the courts of appeals, the Act also

requires district courts to transfer any case or part of any case challenging an order of removal,

deportation or exclusion pending on the date of the Act's enactment to the Court of Appeals for

the Circuit in which a petition for review could have been filed.[3]

While Congress specifically eliminated the district courts' habeas corpus jurisdiction over

review of removal orders, the REAL ID Act does not affect the district courts' jurisdiction over

review of other habeas corpus claims.  Section 106(a)(1) only eliminates district courts' habeas

jurisdiction over review of orders of removal.  See id. at § 106(a)(1) (a petition for review shall

be the "sole and exclusive means for judicial review of an order of removal").  Moreover, the

---

[2]     Section 106(a)(1) reads in relevant part: "a petition for review filed with an appropriate court of
appeals . . . shall be the sole and exclusive means for judicial review of an order of removal."
REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1), 119 Stat. 231 (2005).

[3]     Section 106(c) provides that "the district court shall transfer" any case "challenging a final
administrative order of removal, deportation or exclusion" that is "pending in a district court on
the date of enactment of this division."  REAL ID Act of 2005, Pub. L. No. 109-13, § 106(c), 119
Stat. 231 (2005).

REAL ID Act requires the district courts to transfer only those parts of the case that challenge an order of removal, deportation or exclusion.  Id. at § 106(c) ("[T]he district court shall transfer the case (or part of the case that challenges the order of removal, deportation or exclusion)to the court of appeals . . . ").  The legislative history specifically states that § 106 does not divest district courts of habeas review over other claims: "[S]ection 106 will not preclude habeas review over challenges to detention that are independent of challenges to removal orders.  Instead, the bill would eliminate habeas review only over challenges to removal orders."  H.R. Rep. No. 109-72, 175, 2005 U.S.C.C.A.N. 140 (May 3, 2005).

Thus, district courts retain jurisdiction over matters independent of challenges to removal orders.  See, e.g., Channer v. Dep't of Homeland Sec., 406 F. Supp. 2d 204 (D. Conn 2005) (holding that the petitioner's challenge was independent of a challenge to his removal order because he was challenging his detention in state custody, thereby rendering § 106(c) inapplicable); Zhicay v. Sec'y of the Dep't of Homeland Sec., 2005 WL 3180188, 2005 U.S. Dist. LEXIS 29699 (D. Conn. Nov. 23, 2005) (transferring the portion of the petitioner's writ of habeas corpus seeking judicial review of her removal order, but retaining the portion of petitioner's claim requesting adjudication of her pending applications for permission to reapply for admission and for adjustment of her status).  The district courts do not, however, have jurisdiction to review claims that are not found to be independent of removal challenges.  See, e.g., Munoz v. Gonzalez, 2005 WL 1644165, 2005 U.S. Dist. LEXIS 14014 (S.D.N.Y. July 11, 2005) (holding that the district court lacked jurisdiction to review the merits of a petition challenging a removal order or to stay a removal order where the petitioner was not specifically challenging his physical detention); Blake v.Gonzalez, 2005 WL 2850079, 2005 U.S. Dist.

LEXIS 25753 (D. Conn. Oct. 24, 2005) (holding that a challenge to the IJ's procedures and decision to deport the petitioner constituted a challenge to a final order of deportation, stripping the district court of jurisdiction to review the habeas petition).

Because Petitioner's habeas claim was pending on May 11, 2005, the REAL ID Act applies. Petitioner contends, however, that § 106(c) does not apply to his petition because he is not challenging his order of removal. Pet'r's Opp. Mot. Transfer at 5. According to Petitioner, because he solely seeking an injunction to prevent his removal to Ghana he is not challenging the validity of the removal order, but only the manner in which Respondents can execute the order. Id. at 5, 8. Indeed, Petitioner concedes the legality of his order of removal. Id. at 4. In support of his argument, Petitioner likens his petition for an injunction to a claim for protection under the Convention Against Torture ("CAT"), which bars the government from removing aliens to a country where it is more likely than not that the alien will be tortured upon return to that country. See 8 C.F.R. § 208.16. When an alien is granted protection under the CAT he or she can still be removed from the United States, but not to the country where it has been determined that there is a strong possibility of the alien being tortured. See 8 C.F.R. § 208.16(f). Petitioner maintains that a claim for protection under the CAT is not a challenge to a removal order and § 106(c) should not apply because a person seeking protection under the CAT is merely requesting a limitation on how the removal order should be executed. Id. at 6-8. Petitioner maintains that as long as he only challenges his removal to one specific country rather than to any country, the transfer provisions of § 106(c) do not apply.

Respondents' reply is threefold. First, they argue that in order to invoke this Court's habeas jurisdiction, Petitioner had to challenge his deportation order because the order was the

basis of his being in custody.  See Resp'ts' Reply at 4.  If Petitioner had not been in custody, they argue he could not establish this Court's habeas jurisdiction.  Second, Respondents contend that if Petitioner is only seeking to challenge the execution of the removal order, then, pursuant to 8 U.S.C. § 1252(g), no court would have jurisdiction to hear the case.[4]  Id. at 4-5.  According to Respondents, if Petitioner is challenging the execution of his removal order, then his petition should simply be dismissed pursuant to § 1252(g).  Id.  Finally, Respondents challenge Petitioner's contention that a claim for protection under the CAT is not subject to § 106(c). Protection under the CAT can potentially extend to "any" country, however, the BIA will deny (or grant, as the case may be) such protection only with regard to the country from which the alien has applied for protection, and thus, if the alien seeks judicial review of the BIA's decision only with regard to one country, that one country from which the alien has applied for protection is covered by the BIA's prior decision and is subject to judicial review.  Moreover, Respondents argue that, in the present case, the only country from which Petitioner requested protection under the CAT is the same country to which he requests injunctive relief against removal in his habeas petition.  Respondent therefore contends that Petitioner has made no legal or factual distinction between a claim for protection under the CAT and any other challenge to a final order of removal, both of which are subject to § 106(c).  Id. at 5-6.

The REAL ID Act does apply to claims for protection under the CAT.  Section 106(a)(1)(B) added the following provision to § 242(a) of the INA:

---

[4]     8 U.S.C. § 1252(g), as amended by Real ID Act § 106(a)(3), reads: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

> (4) CLAIMS UNDER THE UNITED NATIONS CONVENTION – Notwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1)(B), 119 Stat. 231 (2005).  Prior to the

enactment of the REAL ID Act, 8 U.S.C. § 1252(a)(2)(C) barred aliens convicted of an

aggravated felony from petitioning the court of appeals for direct review of the BIA's denial of

CAT relief.  See Enwonwu v. Gonzales, ___ F.3d ___, 2006 WL 321186, *10, 2006 U.S. App.

LEXIS 3375 (1st Cir. Feb. 13, 2006).  Section 106(a)(1)(B) and section 106(a)(1)(D) of the

REAL ID Act have, however, removed the barrier to petition the courts of appeals to review

CAT claims at least in regard to questions of law and constitutional claims.  See REAL ID Act, §

106(a)(1)(B) ("a petition for review filed with an appropriate court of appeals . . . shall be the

sole and exclusive means for judicial review of any cause or claim under the [CAT]"); §

106(a)(1)(D) (nothing in . . . this Act . . . which limits or eliminates judicial review, shall be

construed as precluding review of constitutional claims or questions of law"); see also Kamara v.

Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005) (noting that the REAL ID Act granted jurisdiction

to courts of appeals to review CAT claims by aggravated felons, which extended to legal

determinations and application of law to the facts); Hamid v. Gonzales, 417 F.3d 642, 647 (3d

Cir. 2005) (noting that, under the REAL ID Act, courts of appeals may review constitutional and

legal questions relevant to an aggravated felon's claim for CAT relief).

   Thus, even if, as Petitioner argues, a claim under the CAT for protection from removal to

one specific country could be regarded as merely a challenge to the manner in which a removal

order can be executed and not as a challenge to a final order of removal, that claim would still be subject to the provisions of the REAL ID Act and the court of appeals would be the only available forum for judicial review.  It appears then that Congress, in enacting § 106, did not intend to distinguish between a challenge to a final order of removal and a challenge to the manner in which a final order may be executed.  Both challenges are subject to the provisions of the REAL ID Act and both can only be reviewed in the courts of appeals.  Thus, even if we were to equate Petitioner's habeas claim to a claim for protection under the CAT, we could not escape the jurisdictional bars and transfer provisions of the REAL ID Act.

A review of the legislative history of the REAL ID Act confirms that Congress intended § 106 to apply to Petitioner's habeas claim.  Congress intended § 106 to address and ameliorate the effect of a number of court decisions interpreting changes made to the INA in 1996 that favored criminal aliens.  H.R. Rep. 109-72, 172, 2005 U.S.C.C.A.N. 140 (May 3, 2005).  In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3546, both of which contained provisions eliminating habeas review of deportation and removal orders issued against criminal aliens.  Id. at 172-73.  In 2001, however, the Supreme Court held that criminal aliens could seek habeas review of their removal orders under 28 U.S.C. § 2241 in district courts and could appeal an adverse decision to the appropriate court of appeal.  I.N.S. v. St. Cyr, 533 U.S. 289 (2001).  The Supreme Court relied in part on the fact that Congress did not specifically mention § 2241 or habeas petitions when it eliminated all judicial review over criminal aliens' removal orders.  Id. at 312-13.  The Court required an explicit reference to § 2241 or habeas petitions because Congress had not

provided a separate judicial forum for criminal aliens to raise pure questions of law under AEDPA and the IIRIRA at the time St. Cyr was decided.  Id. at 298-300, 312-14.  The Court also recognized that as a result of its holding, criminal aliens could receive judicial review in both the district courts and the courts of appeals, whereas non-criminal aliens could only petition the courts of appeals.  This anomaly, the Court said, could be fixed by Congress "provid[ing] an adequate substitute [to section 2241] through the courts of appeals."  Id. at 314. n.38.

The St. Cyr holding had several problematic effects: (1) criminal aliens could delay their expulsion from the United States; (2) criminal aliens who had committed serious crimes in the United States were able to obtain more judicial review than non-criminal aliens; and (3) federal courts were confused about what immigration issues could be reviewed and which courts could review them.  See H.R. Rep. 109-72, 173-74.  Noting that this resulted in "piecemeal review, uncertainty, lack of uniformity, and a waste of resources both for the judicial branch and Government lawyers—the very opposite of what Congress tried to accomplish in 1996," id. at 174, Congress enacted § 106 in an effort to solve these anomalies and restore uniformity and order to the law.  Id.  ("By channeling review to the courts of appeals, section 106 will eliminate the problems of bifurcated and piecemeal litigation.").  Under § 106, criminal aliens are less able to delay their removal and will not receive more judicial review than non-criminal aliens.  Id.  Congress emphasized that, in enacting § 106, it was not completely stripping the district courts of habeas jurisdiction, but intended the amendment to eliminate habeas review only over challenges to removal orders, not "habeas review over challenges to detention that are independent of challenges to removal orders."  Id. at 175.

In light of Congress' expressed intent in enacting § 106, this Court concludes that

Petitioner's habeas petition falls within the ambit of that section and should be transferred to the Second Circuit as a Petition for Review.  First, Petitioner's challenge to the manner in which the removal order is executed is not an independent challenge to his detention.  The removal order is the basis for his being detained.  The ordinary meaning of the word "independent" is "not relying on something else: not contingent; not dependent."  Webster's New Collegiate Dictionary 612 (9th ed. 1985).  Any challenge to Petitioner's detention would have to depend on the removal order because, again, that is the basis of his being in custody.  Additionally, the issues that will be raised in Petitioner's claim for an injunction would have to include review of the IJ's and BIA's procedures and decisions in choosing to remove him to Ghana.  A petition for an injunction preventing Petitioner's removal to Ghana is not an independent challenge of his detention, but rather is just another way to challenge his order of removal.  He seeks its restriction.

Retaining jurisdiction over Petitioner's claim for an injunction would ignore Congress' intentions in enacting § 106 of the REAL ID Act.  Petitioner, a criminal alien, would be able to obtain more judicial review than a non-criminal alien by petitioning this court and then potentially appealing the decision to the court of appeals.  In addition, allowing Petitioner's claim to be heard in this court would cause confusion among other federal courts as to what issues could be judicially reviewed by the district courts and what issues must be judicially reviewed by the courts of appeals.  Furthermore, Petitioner would be able to delay his removal from this country were he to have his claim judicially reviewed in this court as well as the court of appeal.

Other district court decisions in this circuit lend support to our conclusion.  Unlike in Channer, 2005 WL 3542900, and Zhicay, 2005 WL 3180188, Petitioner does not challenge his state conviction, physical detention or ability to adjudicate an application for readmission or

adjustment of status.  Petitioner has already served his sixty-day sentence for his breach of peace and failure to appear charges and does not question the validity of his drug conviction or classification of it as an aggravated offense so as to warrant his deportation.  His sole contention is that the United States government has a duty to protect him because it created the risk of torture when it enlisted him in the prosecution of the major Ghanian drug ring.  Any judicial review would be more like that in <u>Blake</u>, 2005 WL 2850079, because such review would necessarily require examination of the IJ's and BIA's procedures and decisions in choosing Ghana as the country to which Petitioner would be removed and any consideration by the IJ and/or BIA of Petitioner's cooperation with the Department of Justice in bringing down his former drug ring.  Thus, just like <u>Blake</u>, any judicial review of Petitioner's claim would include and likely involve nothing more than a review of the arguments and proceedings before the IJ and BIA regarding Petitioner's deportation to Ghana.  Petitioner's claim is, therefore, not an independent challenge to his detention and is subject to transfer under § 106(c).

**B.  Suspension Clause**

The Suspension Clause of the United States Constitution provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  Art. I, s. 9, cl. 2.  However, "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."  <u>Swain v. Pressley</u>, 430 U.S. 372, 381 (1977), <u>United States v. Hayman</u>, 342 U.S. 205, 233 (1952).  The Supreme Court has suggested that an adequate substitution for the district courts' habeas corpus jurisdiction could be judicial review in the courts of appeals.  <u>See</u> <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 314 n.38, 121 S.Ct. 2271,

12

150 L. Ed. 347 (2001).

The Supreme Court requires that Congress specifically articulate its intent to repeal habeas corpus jurisdiction by "specific and unambiguous statutory directives." Id. at 299.  A statute that does repeal habeas corpus jurisdiction would raise Suspension Clause issues if it entirely precludes review of a pure question of law by any court, as the Suspension Clause requires "some judicial intervention in deportation cases." Id. at 300 (quoting Heikkila v. Barber, 345 U.S. 229, 235, 73 S.Ct. 603, 97 L. Ed. 972 (1953) (internal quotations omitted)). The Second Circuit Court of Appeals has also stated that even a partial repeal of habeas jurisdiction may violate the Suspension Clause, if the statute allows for review of constitutional claims and jurisdictional facts, but not of statutory challenges.  See Calcano-Martinez v. I.N.S., 232 F.3d 328, 341 (2d Cir. 2000).  The Calcano-Martinez Court reasoned that the language of 28 U.S.C. § 2241 extends to persons who claim to be detained in violation of not only the Constitution, but also of the laws and treaties of the United States, and therefore review of statutory challenges is also deemed essential to ensure that a detained alien receives due process of law.  Id. at 342.

However, courts will generally avoid finding Suspension Clause violations if petitioners have an opportunity to be heard on the merits in a substitute judicial forum.  The Supreme Court, in Swain, held that a state court's testing of the legality of a person's detention was not an inadequate substitution for federal habeas review merely because state judges do not have Article III life tenure.  430 U.S. at 381-83.  Additionally, the Second Circuit has held that the one-year limitation period for filing habeas petitions under the AEDPA does not violate the Suspension Clause because petitioners still have an opportunity to be heard on the merits.  Lucidore v. N.Y.

State Div. of Parole, 209 F.3d 107, 113 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). The Second Circuit has also held that treating a petitioner's habeas petition as "second or successive" under the AEDPA because his first petition was denied as time-barred does not violate the Suspension Clause because the petitioner had an opportunity to be heard on the merits. Villanueva v. United States, 346 F.3d 55, 62 (2d Cir. 2003), cert. denied, 124 S.Ct. 2895 (2004); see also Warren v. Garvin, 219 F.3d 111, 113 n.2 (2d Cir. 2000) cert. denied, 531 U.S. 968 (2000) (holding that dismissing a habeas petition as time-barred under the AEDPA does not violate the Suspension Clause because petitioner had "years" to file the petition and gave no explanation why he failed to file on time).

In contrast, however, the Second Circuit has held that a petition should not be classified as "second or successive" under the AEDPA where the dismissal of the first petition as time-barred was erroneous. Muniz v. United States, 236 F.3d 122, 128-29 (2d Cir. 2001). Similarly, the Second Circuit has also held that a petition should not be classified as "second or successive" under the AEDPA where the petition seeks to raise a claim that matured after the first petition had been filed. James v. Walsh, 308 F.3d 162, 168 (2d Cir. 2002). The Court held that to hold otherwise would completely deny petitioner any collateral review, potentially raising a Suspension Clause issue. Id. Thus, a Suspension Clause violation does not arise unless a statutory provision effectively prevents a petitioner from being heard on the merits of his or her claim. As long as habeas petitioners have an opportunity to be heard on the merits in some judicial forum, a statutory provision repealing another court's habeas jurisdiction will not implicate the Suspension Clause.

Petitioner contends that because the Immigration Court and the BIA cannot adjudicate

constitutional claims, the administrative record will lack the factual development necessary for judicial review of constitutional issues like the ones raised here.  Pet'r's Opp. at 9-10.  According to Petitioner, since 8 U.S.C. § 1252(b)(4)(A) directs a court adjudicating a petition for review which challenges a removal order to limit its review to the facts in the administrative record, the court of appeals will not be in a proper position to rule on a "constitutionally based injunction on the execution of a removal order."  Id.  In the absence of habeas jurisdiction in the district courts, Petitioner fears that he will be deprived of an adequate and effective forum for judicial review. In such a situation, Petitioner argues, § 106 of the REAL ID Act constitutes an unlawful suspension of the writ of habeas corpus.  Id.  In order to avoid a Suspension Clause violation, Petitioner argues that this court should interpret § 106 so that his case is not transferred to the Second Circuit Court of Appeals.

Respondents, on the other hand, claim that the adequacy of the review in the court of appeals does not affect the issue of transfer since the court of appeals may, upon transfer, determine whether their review is constitutionally adequate.  Resp'ts' Reply at 6.  Respondents also argue that the Supreme Court, in Reno v. American-Arab Anti-Discrimination Committee, foreclosed Petitioner's argument regarding the lack of factual development as a result of the unavailability of habeas review in the district courts.  Id. at 6-7; 525 U.S. 471, 487-88 (1999) (holding that alien-petitioners seeking prospective injunctive relief were not entitled to judicial review of their constitutional claims).[5]  Finally, Respondents argue that although the Immigration

---

[5]       Contrary to what Respondents argue, Reno does not bar all aliens from seeking judicial review of a constitutional claim and does not foreclose Petitioner's argument regarding the lack of development of the administrative record, but stands for the proposition that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation."  525 U.S. at 488.  The holding in Reno is narrower than Respondents contend, as Justice Scalia made clear by stating that "[o]ur holding generally deprives deportable aliens of the

Court and BIA do not have jurisdiction to adjudicate constitutional claims they do consider constitutional claims and therefore the administrative record will be sufficiently developed for judicial review of those issues.  Id. at 7.  Furthermore, Respondents assert that even if a constitutional issue is not raised to the BIA, the administrative record will be factually adequate because the facts and  issues relevant to a claim for protection under the CAT are indistinguishable from those raised in a claim like Petitioner's.  Id. at 8-9.

Section 106 of the REAL ID Act contains clear and unambiguous statutory directives divesting the district courts of their habeas corpus jurisdiction to review final orders of removal.  See REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1)(B), 119 Stat. 231 (2005) ("Notwithstanding . . . section 2241 of title 28 . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal").  At first glance, the repeal of district courts' habeas jurisdiction appears lawful, but this Court must consider whether Petitioner still has an opportunity to be heard on the merits in another judicial forum in order to avoid a Suspension Clause issue.  Section 106 provides for judicial review of final orders of removal in the courts of appeals, but Petitioner contends that in the absence of the district courts' habeas jurisdiction, the inability to create a factual record in regard to a constitutional claim at the administrative hearings effectively prevents petitioners from being heard on the merits of such constitutional claims in the courts of appeals.   Pet'r's Opp. at 9-10.  Petitioner argues that the courts of appeals

defense of selective prosecution."  Id. at 488 n. 10.  Because Petitioner does not raise selective prosecution as a defense to his deportation, the holding in Reno does not directly apply to Petitioner's constitutional claims.  Nevertheless, we find Petitioner's arguments unavailing for other reasons.

16

are an inadequate or ineffective substitute forum and § 106 is, therefore, an unlawful suspension of the writ of habeas corpus.  Id.  This court disagrees.

First, Petitioner's argument that the administrative record will be insufficiently developed for the court of appeals to make a proper and valid decision on a constitutionally-based injunction is unavailing.  Petitioner had the opportunity to bring a claim before the BIA for protection under the CAT and that claim would raise the same issues involved in Petitioner's habeas petition.[6]  The claims do not challenge the fact that Petitioner should be removed from the country, but simply seek protection from removal to a country where there is a strong possibility of torture or physical harm.  Thus, both would include a review of the evidence pertinent to determining the possibility of torture in the country at issue.  In the instant action, had Petitioner raised a claim under the CAT, the administrative record would have included facts and evidence pertaining to Petitioner's cooperation with the Department of Justice and the risk of torture in Ghana arising therefrom.  Therefore, even without the ability to petition this court, the administrative record would have been developed on the issues raised in Petitioner's habeas petition.

Second, § 106 does not effectively preclude a petitioner from being heard on the merits of a claim similar to the one Petitioner presents.  While § 106 prevents this court from hearing Petitioner's claim, it does not affect his ability to raise a claim for protection under the CAT before the Immigration Court or the BIA.  Again, as Petitioner has admitted, the relief he is seeking—i.e., an injunction preventing his removal to Ghana—is exactly the same relief that he

---

[6]     Petitioner admitted this similarity in his Opposition to Respondent's Motion to Transfer.  See Pet'r's Opp. at 6-8.

17

would have received had he been granted protection under the CAT.  When an alien is granted

protection under the CAT, the government is prohibited from removing the alien to the country

where it has been determined that there is a strong possibility of the alien being tortured.  8

C.F.R. § 208.16(f).  In other words, when protection under the CAT is granted, the government is

effectively enjoined from removing the alien to the country wherein torture is possible.  Thus,

petitioners raising claims similar to the one raised here have the opportunity to be heard on the

merits of their claims during a CAT hearing.

Furthermore, § 106 specifically provides petitioners with a means for judicial review of

their claims under the CAT, namely, the courts of appeals.  See REAL ID Act, § 106(a)(1)(B)(4).

Section 106 also provides that limitation on judicial review does not preclude review of

constitutional claims or questions of law raised upon a petition for review filed with the court of

appeals.  Id. at § 106(a)(1).  Even though the Immigration Court and BIA are without authority to

hear constitutional claims like Petitioner's during a CAT hearing, § 106 does not preclude

petitioners from raising such constitutional claims before the court of appeals upon review.  Had

Petitioner raised a claim for protection under the CAT before either the Immigration Court or the

BIA, he would have been heard on the merits of his claim and the administrative record would

have been sufficiently developed for the court of appeals to adjudicate his constitutional claim.[7]

---

[7]    Even where no CAT claim has been raised, it is at least plausible that the courts of appeals could
conduct their own fact-finding or at least remand to the Immigration Court or the BIA for a fact-
finding hearing if one is necessary.  Respondents point to 28 U.S.C. § 2347(b)(1), which provides
a mechanism by which the courts of appeals could remand the case to the administrative agency
where a hearing is required by law and no such hearing was conducted by the agency.  Similarly, §
2347(b)(3) also provides that where a hearing is not required by law but a genuine issue of material
fact is presented, the courts of appeals can transfer the case to a district court for a hearing and
determination as if the proceedings were originally initiated in the district court.  In Reno, the
Attorney General argued that because the INS was not required to hold a hearing before filing a
deportation order, a § 2347(b)(3) transfer to the district court would be an appropriate mechanism

Petitioner cannot now argue that § 106 is an unconstitutional suspension of the writ of habeas corpus when it was his failure to raise a CAT claim at the administrative level and not the operation of § 106 which prevented him from being heard on the merits of his claim.

The facts that § 106 does not preclude petitioners from raising a claim under the CAT to the Immigration Court and the BIA, that that claim is equivalent to the one presently raised and that § 106 provides a judicial means of review of both constitutional claims and questions of law lead this court to conclude that § 106 does not effectively preclude Petitioner from being heard on the merits of his claim and is not, therefore, an unlawful suspension of the writ of habeas corpus.[8]  Accordingly, this court must transfer this case to the Second Circuit Court of Appeals in accordance with the clear Congressional mandates.  Petitioner's constitutional arguments can be addressed by the court of appeals.

Finally, Respondents contend that Petitioner's "state-created danger" theory has no place

_____

for the resolution of material facts in some cases.  See 525 U.S. at 496 n.2 (Ginsburg, J., concurring).  Justice Ginsburg, recognizing the validity of this argument, stated that "[w]hile it is best left to the courts of appeals in the first instance to determine the appropriate mechanism for such factfinding necessary to the resolution of a constitutional claim, I am confident that provision for such factfinding is not beyond the courts of appeals' authority."  Id. (Ginsburg, J., concurring).  While Justice Scalia questions the validity of this procedure in his majority opinion, id. at 488 n.10, factfinding or remand for factfinding by the courts of appeals in the immigration context has yet to be foreclosed.  Therefore, the lack of a developed factual record is not a sufficient basis for the argument that the courts of appeals are an inadequate and ineffective substitute forum for habeas jurisdiction.

[8]   This Court has come across one case which suggested that Section 106(a)(1)(B)(5) may provide an inadequate substitute forum because it bars aliens fighting removal from receiving an evidentiary hearing.  In Wahab v. U.S. Attorney Gen., 373 F.Supp.2d 524, 525 (E.D.Pa. 2005), the court indicated that because § 106(a)(1)(B)(5) requires aliens to file a petition for review, which restricts a reviewing court to decide the petition only on the administrative record, aliens are deprived of the ability to present evidence at a hearing.  The court also intimated that § 106(a)(1)(B)(5) may be even more inadequate because, read together with 8 U.S.C. § 1252(a)(2)(C), which bars courts from entertaining an alien's petition for review if that alien committed any enumerated crime, section 106 appears to foreclose certain alien criminals from receiving any judicial review.  Id.  Nevertheless, the court honored Congress' mandates and transferred the case to the Court of Appeals.

in the immigration context and, therefore, cannot be the basis for a substantive due process claim. Because we hold that Petitioner's habeas petition shall be transferred, we are without jurisdiction to decide this issue and think it best left to the court of appeals.

## III.  CONCLUSION

Respondents' Motion to Transfer [Doc. No. 9] is **granted** and the petition for writ of habeas corpus is hereby **transferred** to the Second Circuit Court of Appeals.  Any removal of Petitioner is hereby **stayed** pending the resolution of the matter before the Second Circuit.  The clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, March  10 , 2006.

_____
/s/

Peter C. Dorsey, U.S. District Judge
District of Connecticut